UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMENIC ROLAK,

                        Petitioner,

v.

UNITED STATES OF AMERICA,

                        Respondent.

Civil Case Number 23-12235
Criminal Case Number 20-20396
Honorable David M. Lawson

_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

Petitioner Domenic Rolak pleaded guilty to distributing controlled substances and possessing a firearm as a convicted felon.  He was sentenced on August 25, 2022 to a term of 84 months in prison on both counts, to be served concurrently.  He did not appeal.  The petitioner filed his motion to vacate the convictions and sentences on August 31, 2023, and he later filed two supplements to the motion raising additional claims.  Rolak mainly argues that his attorney did not provide representation consistent with the Constitution, citing six specific instances of deficient performance.  He also argues that the felon-in-possession statute, 18 U.S.C. § 922(g)(1), is unconstitutional as applied to him.  The government has responded to most of the arguments, contending that they are without merit.  The motion is fully briefed, and no hearing is necessary to determine that the claims lack merit.  The motion will be denied.

I.

On September 2, 2020, a grand jury charged petitioner Rolak in a seven-count indictment with four counts of distributing controlled substances, 21 U.S.C. 841(a)(1), and three counts of possessing a firearm after having been convicted of a felony, 18 U.S.C. 922(g)(1).  Those charges arose from a sequence of incidents that occurred between July and September 2017.  On May 5, 2022, the petitioner pleaded guilty under a Rule 11 plea agreement to Counts 4 and 5 of the

indictment, charging one each of the controlled substance and firearm crimes. On August 25, 2022, Rolak was sentenced to concurrent prison terms of 84 months. He did not appeal. Rolak timely filed his motion to vacate the convictions and sentences, later followed by two supplements to the motion raising additional claims. The government has responded to most of the grounds arguing that they are without merit. Rolak also filed a motion for compassionate release on May 5, 2023, which the government opposes on the merits, and which is discussed in a separate order.

The presentence investigation report aptly summarizes the offense conduct as follows. In July 2017, agents of the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began communicating with Rolak via text messages concerning transactions involving drugs and guns. On July 5, 2017, a controlled buy was conducted in which a confidential informant purchased 14.91 grams of suspected powder cocaine from Rolak. On July 20, 2017, a second controlled buy occurred involving 14.88 grams of suspected powder cocaine. On three other days between July 27 and August 3, 2017, controlled purchases again were conducted involving approximately 15 grams of suspected cocaine on each occasion. On September 8 and September 19, 2017, Rolak engaged in two more controlled buy transactions, which involved both drugs and guns. On each of those occasions, Rolak delivered to confidential informants various pistols with obliterated serial numbers; and each transaction also involved quantities of powder cocaine between 15 and 30 grams.

Rolak's lengthy criminal history also was recited in the presentence report, and the relevant details of his prior convictions are undisputed, although they bear on some of the issues raised in the present motion.

On February 15, 1994, Rolak was convicted of unarmed robbery in a Michigan state court and sentenced to probation. He violated the terms of his probation numerous times and on

September 9, 1999 he was re-sentenced to 5 to 15 years in prison for those violations. He was released on parole on December 29, 2004 but absconded from supervision and eventually was returned to prison through October 12, 2010. He violated the terms of his parole again in 2012 and served additional time in prison, eventually being discharged from parole in 2015, after having been under sentence for the unarmed robbery for 19 years.

On January 31, 1995, Rolak pleaded guilty to charges of larceny and receiving stolen property, and he was sentenced to a six-month custodial term. On July 1, 1996, he pleaded guilty to driving with a suspended license, for which he paid a $325 fine. On August 2, 1996, he pleaded guilty to charges of possessing marijuana and was sentenced to a 90-day custodial term.

On March 13, 1998, Rolak pleaded guilty to state charges of distribution and manufacture of a controlled substance (marijuana), and a related "dangerous weapon" offense. He was sentenced to three years in prison and six months on probation. The crimes were committed in July 1997, when Rolak was 20 years old.

On July 31, 1998, Rolak pleaded guilty to assault and battery, and he was sentenced to 19 days in jail. On May 20, 1999, he pleaded guilty to fleeing and eluding arrest, and he was sentenced to 93 days in jail. On August 27, 1999, he pleaded guilty to delivering or manufacturing marijuana, for which he served 158 days in jail. On May 2, 2003, Rolak pleaded guilty to possessing less than 25 grams of marijuana, for which he received a sentence of three years on probation. On May 11, 2005, he pleaded guilty to operating a motor vehicle while intoxicated, for which he was sentenced to 90 days in jail and six months of probation.

On August 23, 2005, Rolak pleaded guilty to delivery or manufacturing between 50 and 449 grams of marijuana. The charges arose from criminal conduct occurring in May 2005, when

Rolak was 28 years old.  On September 8, 2005, he was sentenced to a term of 30 months to 20 years in prison.  Eventually he was paroled and discharged from parole in August 2015.

On August 18, 2008, Rolak pleaded guilty to a charge of driving on a suspended license, for which he paid a $190 fine. On August 18, 2009, he pleaded guilty to possession of marijuana, for which he received a sentence of six months on probation.

On September 25, 2009, Rolak pleaded guilty on charges of possessing a controlled substance analogue, and he was sentenced to one to four years in prison.  The offense conduct occurred in July 2009, when Rolak was 32 years old.

On July 26, 2012, Rolak pleaded guilty on a charge of operating while intoxicated, for which he was sentenced to a three-year term of probation.

Finally, on May 31, 2017, at age 39 years, Rolak pleaded guilty to possessing less than 25 grams of cocaine, heroin, or another narcotic; assaulting, resisting, or obstructing a police officer; several counts for possessing controlled substances; and an habitual offender enhancement.  He was sentenced to 12 months in prison and 24 months on probation.  The underlying offense conduct occurred on February 1, 2017.

## II.

It is well understood that a federal defendant challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  And he "must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire

-4-

proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

Here, Rolak's sole contention is that his defense attorney's performances dipped below professional norms. Many of his arguments involve alleged legal errors supposedly committed in the course of his case. Rolak did not appeal those issues. A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process"). Moreover, when a defendant fails to raise an issue at trial or on direct appeal, that issue is generally forfeited. *See Huff v. United States,* 734 F.3d 600, 605-06 (6th Cir. 2013).

However, a claim that would otherwise be forfeited may be raised through a collateral attack under section 2255 if a defendant "can demonstrate cause and prejudice to excuse his default." *Id.* at 606. "Ineffective assistance of counsel can constitute cause for a procedural default." *Ibid.* Furthermore, a claim that "cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). And a claim of ineffective assistance of counsel itself is properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007).

### A.   Ineffective Assistance of Counsel

To succeed on an ineffective-assistance-of-counsel claim, a petitioner "must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122

(2009).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  One way of establishing deficient performance is to show that defense counsel missed a meritorious argument under the controlling law.  However, the failure to file a meritless motion or raise a groundless objection does not constitute deficient performance.  *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles*, 556 U.S. at 123 (noting that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty-plea-based conviction.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  The first component of the test remains the same.  *Ibid.*  However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  *Id.* at 59.  In other words, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Ibid.*; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

In a federal habeas proceeding, when the Court weighs a claim of ineffective assistance, "[a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief" on his claim. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quotations omitted). "Where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims," but "[a] petitioner's mere assertion of his innocence, without more, does not entitle him to an evidentiary hearing." *Ibid.* And where the record presents "considerable doubt" about the interactions of a petitioner and his attorney, the Court should conduct an evidentiary hearing to bring clarity to the proceedings. *See Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). But where, as here, the existing record demonstrates no significant factual dispute, that the claims of ineffective assistance are unsupported, or that the petitioner has not met the applicable standard, no hearing is required. *Goward v. United States*, 569 F. App'x 408, 412 (6th Cir. 2014).

The Court examines each of Rolak's six claims that his attorney performed deficiently. No evidentiary hearing is required because the undisputed facts demonstrated by the record show that all of the claims are without merit. *Ibid.* Moreover, Rolak has not advanced any substantial factual support for several of the claims, and on the others, he has failed to make out viable *prima facie* grounds for relief.

### 1. Guideline Calculations

For his first claim of deficient performance, Rolak asserts, without elaboration, that his trial counsel was ineffective by failing to object at sentencing to the inclusion of an "obliterated serial number" enhancement, which added four points to the base offense level for the felon-in-possession conviction. His second claim is similar: he argues that his trial counsel was ineffective by failing to object to the consideration of an unarmed robbery conviction that he committed when

he was a juvenile, which he says was used improperly to inflate the criminal history category. Both arguments are groundless.

### a. Offense Level Enhancement

First, Rolak has failed to present any evidence to sustain his claim that the computed offense level of 29 was calculated improperly based on the use of an "obliterated serial number" enhancement. United States Sentencing Guideline "[s]ection 2K2.1(b)(4)(B)'s enhancement increases a defendant's offense level by four if he possessed a firearm that 'had an altered or obliterated serial number.'" *United States v. Sands*, 4 F.4th 417, 420 (6th Cir. 2021). "For the purposes of this enhancement, a firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible." *Id.* at 420-21 (cleaned up). "If a serial number is scratched, but still discernible to the reader without aid, then the number itself has not been altered," and "a serial number that is defaced but remains visible to the naked eye is not 'altered or obliterated' under" section 2K2.1(b)(4)(B). However, "if a firearm's serial number appears in more than one place, only one of them needs to be altered or obliterated for the enhancement to apply," and this provision "is a strict liability enhancement, which means that the intent behind the scratches on the firearm should play no role in the analysis." *Id.* at 421.

At the guilty plea hearing, the Court took note that the parties had stipulated to the fact that the firearm in question had an obliterated serial number. Plea Hr'g, ECF No. 57, PageID.326. Rolak has not presented any evidence calling into question the factual basis for the stipulation or the factual premise for the sentencing enhancement, and he therefore has failed to demonstrate sufficient grounds for habeas relief on this claim of ineffective assistance. *See Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) ("[P]etitioner's claims are stated in the form of conclusions

without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof; and his motion is, thus, legally insufficient to sustain a review."). Because he has not advanced any evidentiary basis to sustain this claim, the petitioner cannot show that his counsel's performance was deficient, and the ineffective assistance claim fails. Declining to raise a groundless objection does not constitute deficient performance. *Jalowiec*, 657 F.3d at, 321-22.

### b. Criminal History

Second, Rolak contends that his criminal history category improperly was inflated by the inclusion of a juvenile conviction for unarmed robbery, and that his lawyer performed deficiently by failing to object on that ground. However, the presentence report clearly indicates that the criminal history calculation resulting in Category VI was dictated not by the cumulative points for scored convictions, but instead by the career offender designation, which mandated a Category VI assignment regardless of other offense history. *See* U.S.S.G. § 4B1.1(b). Rolak's challenge to the career offender designation is without merit for reasons discussed further below. In light of the inevitability of that designation, his challenge to the inclusion of the unarmed robbery conviction in the criminal history score is inconsequential, and he cannot show that his counsel was ineffective by failing to raise a groundless and immaterial objection.

### 2. Career Offender Designation

Rolak contends that his trial counsel failed to object at sentencing to the career offender designation on the grounds that the petitioner's conviction for unarmed robbery was based on a crime committed while he was a juvenile, and because the crime of unarmed robbery as defined under Michigan state law is not a "crime of violence" within the meaning of that phrase under the relevant provisions of the U.S. Sentencing Guidelines, U.S.S.G. § 4B1.2(a). This argument fails because Rolak qualifies as a career offender even without consideration of his robbery adjudication.

"To qualify as a 'career offender,' [the petitioner] must have had two prior felony convictions for 'either a crime of violence or a controlled substance offense.'" *United States v. Loines*, 165 F.4th 475, 489 (6th Cir. 2026) (quoting U.S.S.G. § 4B1.1(a)).  The term "controlled substance offense," is defined "in relevant part, as 'an offense under federal or state law . . . that[] prohibits . . . distribution [or possession with intent to distribute] . . . of a controlled substance.'" *United States v. Reed*, 163 F.4th 338, 368 (6th Cir. 2025) (quoting U.S.S.G. § 4B1.2(b)).  "[S]tate-law controlled substance offenses need not define controlled substances according to the Controlled Substances Act to count under § 4B1.2(b)."  *Ibid.* (citing *United States v. Jones*, 81 F.4th 591, 598 (6th Cir. 2023)).  The Sixth Circuit has held that felony convictions under Michigan state law for delivery or manufacture of marijuana are "controlled substance offenses" for the purposes of the Career Offender enhancement.  *United States v. Rogers*, No. 23-1663, 2024 WL 4785333, at *6 (6th Cir. Nov. 14, 2024).

Rolak's argument that his juvenile unarmed robbery conviction could not validly sustain a Career Offender designation because it is not a "crime of violence" is immaterial in light of the undisputed fact that Rolak has at least two other, unchallenged prior convictions that qualify as "controlled substance offenses" under the guideline definition.  As indicated above, the Sixth Circuit has held that convictions for delivery or manufacture of controlled substances under Michigan state law — including convictions involving marijuana — are "controlled substance offenses" relevant to a Career Offender designation.    *Rogers*, 2024 WL 4785333, at *6 (citing *United States v. Jones*, 81 F.4th 591, 598 (6th Cir. 2023)).  Rolak does not dispute that he has at least three felony convictions for qualifying drug crimes: (1) August 28, 2005, conviction by guilty plea for delivery or manufacture of narcotics or cocaine, with a custodial sentence of 30 months to 20 years in prison (for crime committed when Rolak was 28 years old); (2) July 30, 1999,

conviction by guilty plea for delivery of a controlled substance, with a sentence of 158 days in custody (committed when he was 22 years old); and (3) January 20, 1998, conviction by guilty plea for delivery of cocaine, heroin, or another narcotic, with a 60-day sentence (when petitioner was 20 years old).  None of those offenses were committed when Rolak was a juvenile, and the question whether the crime of unarmed robbery qualifies as a "crime of violence" under the guidelines is irrelevant in light of the undisputed occurrence of at least three qualifying felony drug convictions in the petitioner's criminal history.

The petitioner has not established any valid factual grounds for a challenge to the Career Offender designation, and his trial counsel did not perform deficiently by failing to raise a meritless objection to the determination of the criminal history category under that guideline.

### 3. Facial Challenge to 18 U.S.C. § 922(g)(1)

Rolak says that his attorney should have argued that 18 U.S.C. § 922(g)(1) is unconstitutional on its face, but that challenge is a dead letter following the Sixth Circuit's decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), wherein it was held that because "most applications of § 922(g)(1) are constitutional, the provision is not susceptible to a facial challenge," *id.* at 657.  Rolak's trial counsel was not ineffective by failing to raise a meritless facial constitutional challenge.

### 4. "Entrapment" Defense

Rolak contends that his trial counsel was ineffective by failing to pursue a defense of "entrapment" against the charge that the petitioner possessed a firearm after having been convicted of a felony, contrary to 18 U.S.C. § 922(g)(1).  In support of this claim, Rolak asserts that he only sold a firearm to the government's undercover agent after the agent made "persistent requests" for a firearm, and that text messages exchanged between the two would have proven that contention,

if they had not been lost to time due to a three-year delay between the commission of the crime and the filing of the indictment.

"The defense of entrapment exists to thwart the government from originating a criminal design, implanting in an innocent person's mind the disposition to commit a criminal act, and then inducing commission of the crime so that the government may prosecute." *United States v. Fox*, 134 F.4th 348, 373 (6th Cir. 2025) (cleaned up). "An entrapment defense 'requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity.'" *Ibid.* (quoting *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002)). "An inducement consists of an opportunity plus something else — typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *Id.* at 373-74. "Tactics typically found by courts to be excessive include threats, dogged insistence, appeals to sympathy, or preying upon the love and loyalty of a special relationship." *Id.* at 374. "'[M]erely afford[ing] an opportunity or facilities for the commission of the crime' is not enough to prove that an inducement occurred." *Ibid.* (quoting *Mathews v. United States*, 485 U.S. 58, 66 (1988)). "Similarly, a showing that the government essentially 'made the crime easier' or 'participated in the crime in some way' does not prove that a defendant was unlawfully entrapped; a defendant must show that he was not inclined to commit the crime." *Ibid.*

"Predisposition, referred to as 'the principal element in the defense of entrapment, focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime.'" *Ibid.* (quoting *Mathews*, 485 U.S. at 63). "To determine if a defendant was predisposed to commit a crime, [the fact finder] weigh[s] the following non-exhaustive factors: '[1] the character or reputation of the defendant, including

any prior criminal record; [2] whether the suggestion of the criminal activity was initially made by the Government; [3] whether the defendant was engaged in the criminal activity for profit; [4] whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and [5] the nature of the inducement or persuasion supplied by the government.'" *Ibid.* (quoting *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002)). "The most important factor in determining the lack of predisposition is whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated government inducements." *Ibid.*

Rolak's argument entirely ignores the nature of the crime for which he was convicted. The petitioner fixates on his contention that he only sold a firearm to the government's agent after repeated requests to buy a gun were made. But Rolak was not charged with or convicted of illegally *selling* or *transferring* a gun. Instead, he was convicted merely of illegally *possessing* a firearm, and doing so with knowledge that he was a person who could not legally have a gun due to his past felony convictions.

At the guilty plea hearing, Rolak admitted that in September 2017, during a meeting with the government's agent, he did in fact possess a gun, that he knew he could not do so legally due to his prior felony convictions, and that the gun was made somewhere outside of Michigan and had passed in interstate commerce. Plea Hr'g, ECF No. 57, PageID.324-25. To secure a conviction under section 922(g)(1), the government did not need to prove any intent to *sell* or *transfer* or dispose of the firearm in any way. Instead, it only needed to "prove beyond a reasonable doubt that: (i) the defendant had a prior felony conviction, (ii) the defendant knew that he had a prior felony conviction, (iii) the defendant thereafter knowingly possessed the firearm specified in the indictment, and (iv) the firearm had traveled in interstate commerce." *United States v. Watson*,

142 F.4th 872, 882 (6th Cir. 2025) (citing 18 U.S.C. § 922(g)(1); *Rehaif v. United States*, 588 U.S. 225, 230 (2019)).  Rolak's admissions on the record satisfy all of those elements.

Rolak contends that the government's agent repeatedly asked Rolak to sell him a gun, but he has not pointed to any evidence concerning how he came into possession of the gun in the first instance.  Moreover, Rolak's presentation does not address any of the relevant factors that are weighed to reach a finding on the second element of the entrapment defense concerning whether he was predisposed to commit the crime.  At least two of those factors weigh heavily against such a finding, since Rolak does not dispute the fact that he has a lengthy criminal history involving numerous felony convictions, and that the transaction was a cash sale made for profit.  Meanwhile, Rolak has not pointed to any evidence tending to prove that his motive to *obtain or possess the gun in the first instance* — as opposed to requests that he *sell* a gun to the government's agent — was instigated originally by the government, or that Rolak came into possession of the gun initially only as a result of being subjected to "excessive pressure" or repeated solicitations by the agent. Claims framed in a federal habeas petition in a conclusory manner, which are unsupported by any substantial factual basis satisfying crucial elements of the legal arguments advanced, are not grounds for collateral relief from a conviction or sentence.  *See Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) ("[P]etitioner's claims are stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof; and his motion is, thus, legally insufficient to sustain a review.").

In light of the absence of supporting evidence for the viability of any "entrapment" defense, or any legal authority endorsing the application of the defense on the undisputed facts made out by the record, and the consequent unlikelihood that he might have prevailed on such a defense at trial, Rolak has not established that he rationally might have chosen to forego an advantageous

plea offer and proceed to trial but for his lawyer's failure to further investigate and develop grounds for a defense of entrapment. *Lockhart*, 474 U.S. at 58. Rolak therefore cannot show prejudice, even if his trial counsel performed deficiently by failing to develop a hopeless and unsubstantiated affirmative defense, which the petitioner has not presented any evidence to support.

### 5. Speedy Indictment Violation

Rolak argues that his trial counsel was ineffective by failing to move to dismiss the indictment based on a three-year delay between when the alleged crimes occurred and the filing of the indictment. This contention is entirely unsupported by any factual basis or developed legal argument, and in support of the claim the petitioner merely posits, without elaboration, that his lawyer should have moved to dismiss the indictment after the Court questioned government counsel about the delay, and the government was "unable to give a reason" for it.

"[T]he Supreme Court has held that the Due Process Clause in the criminal sphere protects against only those actions that violate 'fundamental conceptions of justice' that have historically supported our 'civil and political institutions' and fallen within 'the community's sense of fair play and decency.'" *United States v. Harvel*, 115 F.4th 714, 728 (6th Cir. 2024) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). "To establish that a delay [of indictment] violates due process, defendants [] must meet what [the Sixth Circuit] [has] called a 'nearly insurmountable' burden," which the court of appeals has "distilled . . . into two parts." *Ibid.* (quoting *United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997); citing *United States v. Duncan*, 763 F.2d 220, 222 (6th Cir. 1985); *United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984)). To satisfy the two-part test, "[a] defendant must first prove that the delay caused concrete prejudice to the defense," and "must next prove that the government engaged in the delay with the bad-faith motive 'to gain a tactical advantage' in the litigation." *Ibid.*

Rolak here fails to identify any viable speedy-indictment challenge that could have been brought with respect to both components of the analysis.  First, the only allusion to prejudice in the petitioner's briefing is his claim that cell phone records that might have been preserved if he were charged sooner would have supported an "entrapment" defense.  That defense, however, is defunct in the first instance for reasons discussed above.  Second, Rolak has made no attempt to present evidence of any bad-faith motive by the government aimed at procuring tactical advantage through a charging delay.  The petitioner bears the burden of proof on each element of a speedy-indictment challenge, and merely asserting that the government "has not offered a 'valid reason' why it delayed looking into his crimes" is not sufficient, because the case law "neither imputes nor presumes the government's bad faith merely because defense counsel cannot fathom a valid reason for a part of the delay"; instead, the law puts the burden on the petitioner to show that a "delay arose from some illicit attempt to gain a tactical advantage."  *United States v. Harvel*, 115 F.4th 714, 728-29 (6th Cir. 2024).

Because Rolak has not established any legal or factual grounds for seeking dismissal of the indictment on grounds of a delay in charging, he has not met the threshold criteria of showing that his counsel performed deficiently by failing to file a motion to dismiss.

### B.  As-Applied Challenge to 18 U.S.C. § 922(g)(1)

Finally, in a supplement to his motion Rolak raises a free-standing argument that the conviction under section 922(g)(1) was unconstitutional on an as-applied basis because his personal history does not reveal any indicia that he is a "dangerous" person who lawfully may be deprived of the right to bear firearms.  However, perusal of Rolak's extensive criminal history, recounted earlier, amply demonstrates his dangerousness, and his trial counsel was not ineffective by failing to raise an as-applied challenge to the conviction which was doomed to fail.

Although the Sixth Circuit in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), ruled that 18 U.S.C. § 922(g)(1) is constitutional on its face, the court left room for a defendant "to demonstrate that he is not dangerous, and [that the charge therefore] falls outside of § 922(g)(1)'s constitutionally permissible scope." *Ibid.* Although Congress, consistent with the "nation's history and tradition," can "disarm individuals they believe are dangerous," "when the legislature disarms on a class-wide basis, individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization." *Id.* at 657, 661.

Rolak argues that his felon-in-possession conviction is unconstitutional because his criminal history discloses no tendency toward "violent" crimes or otherwise dangerous behavior. The burden is on the petitioner, not the government, to demonstrate that he is not dangerous and therefore exempt from the categorical prohibition on felon ownership of firearms. *See id.* at 661 ("Thus, in an as-applied challenge to § 922(g)(1), the burden rests on [the defendant] to show he's not dangerous."). Rolak's trial counsel did not marshal any evidence addressing this point, but in the present motion Rolak has not explained how he would have carried his burden in any event.

*Williams* set out some helpful guideposts for the assessment of "dangerousness." According to the Sixth Circuit, when determining whether a defendant's prior convictions establish his "dangerousness," courts are to "focus on [the defendant's] specific characteristics," and "[t]hat necessarily requires considering the individual's entire criminal record — not just the predicate offense for purposes of § 922(g)(1)." *Id.* at 657-58. The panel provided only limited guidance for that inquiry, constraining its holding to the conclusion that "certain categories of past convictions are highly probative of dangerousness, while others are less so." *Id.* at 658.

Parsing the compendium of lawless behaviors, the panel opined that "crimes against the person [encompassing] dangerous and violent crimes like murder, rape, assault, and robbery []

-17-

speak directly to whether an individual is dangerous." *Ibid.* As the panel explained, "[i]t is hard to see how someone who commits such a dangerous and violent act may overcome the presumption that they are dangerous," and "there is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Ibid.* "The dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant," but "in many instances — prior murders, rapes, or assaults — the dangerousness will be self-evident." *Id.* at 660. The panel observed that other categories of crimes also could suffice to establish dangerousness, suggesting that drug trafficking offenses and violations of 18 U.S.C. § 924(c), "while not strictly crimes against the person, may nonetheless pose a significant threat of danger," because "drug trafficking is a serious offense that, in itself, poses a danger to the community." *Id.* at 659.

Rolak's criminal record summarized above provides ample grounds for a finding that he was validly deprived of his right to bear arms. He was convicted (as a juvenile) of robbery, and although the offense was committed while "unarmed," the Sixth Circuit in *Williams* did not distinguish between categories of robbery as probative of dangerousness. He also has a misdemeanor conviction for assault and battery arising from a domestic incident, and assault likewise was acknowledged in *Williams* as indicative of dangerousness. Moreover, he has at least three convictions for felony drug crimes, which explicitly were recognized by the Sixth Circuit as crimes categorically probative of dangerousness. Finally, Rolak has a history of decades of serial major and minor violations of the law, many of which occurred while he was under judicial supervision for other, prior convictions. That history of incorrigible inability to conform his behavior to legal supervision weighs heavily against any conclusion that the petitioner would not pose a danger to society if allowed to possess firearms. Rolak contends that his personal history

evinces a peaceful demeanor, but the totality of his decades of criminal behavior belie that contention and certainly would have sustained a finding by the Court that the petitioner is sufficiently dangerous to be validly prohibited from owning a gun.  There is no likelihood that the Court would have found this a close call, and there is therefore no constitutional defect in the section 922(g)(1) conviction on an as-applied basis.

Rolak did not couch this final claim in the context of ineffective assistance, but even if he had, he could not demonstrate that his trial lawyer performed deficiently by failing to challenge the 922(g)(1) conviction on as-applied grounds, since the record certainly would not have sustained a finding by the Court in petitioner's favor on this point.

III.

The petitioner's claims of ineffective assistance of counsel are without merit, and no hearing is required for that determination.  Likewise, his as-applied constitutional challenge to the section 922(g)(1) conviction is without merit.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate his sentence and supplements (ECF No. 53, 59, 91) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 30, 2026

-19-